First National Bank in Oshkosh and another, Respondents, v. Scieszinski and others, Appellants.

*October 28—November 24, 1964.*

570

For the appellants Edward J. Scieszinski and James L. Scieszinski there was a brief and oral argument by *Noreen G. Bengston* of Madison.

For the appellant Ralph Kenneth Streuly there was a brief and oral argument by *Cleland P. Fisher* of Janesville.

For the respondents there was a brief by *Williams, Williams & Meyer* of Oshkosh, for the First National Bank in Oshkosh, and *R. Kintzler* of Milwaukee, for the Allied Building Credits, Inc., and oral argument by *Mr. Kintzler* and *Mr. Harry E. Meyer.*

WILKIE, J. Three issues are presented on this appeal. They are:

1. Is the court's finding that the appellants conspired to defraud respondents against the great weight and clear preponderance of the evidence?

2. Was the action against Streuly for fraud barred by his discharge in bankruptcy?

3. Did respondents pursue all available remedies to mitigate damages?

*Conspiracy to Defraud.*

A party alleging fraud has the burden of proving it by clear and convincing evidence.[1] The elements of fraud are well established:

---

[1] *Neas v. Siemens* (1960), 10 Wis. (2d) 47, 102 N. W. (2d) 259; *Household Finance Corp. v. Christian* (1959), 8 Wis. (2d) 53, 98 N. W. (2d) 390; *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181.

" 'To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage.' " [2]

Both credit applications contained false statements in regard to the ownership and purchase price of Streulys' residence, and the amount of his outstanding debts. In addition, the First National application stated that there was no other home-improvement loan application pending, when in fact one was sent to Allied simultaneously. Also, the report received by respondents from the Credit Bureau of Walworth county was compiled on the basis of information submitted by some representative of Midwest.

False representations must be a material but need not be the sole inducement for entering into a contract.[3] An assistant cashier at First National testified that the application and report were relied on in considering Streulys' request and that, in his opinion, the loan would not have been granted had the facts been accurately related. The only testimony concerning Allied's reliance on the application and report was by the office manager. Although he was not working at the Milwaukee office at the time the loan was granted, he stated that as a matter of course Allied always considers the application and credit report. It is reasonable to believe that Allied relied on the false statements. There is no question but that both respondents were damaged. Since there clearly was reliance on untrue statements, both the first and third elements of actionable fraud are present and the crucial question is whether there was an intent to defraud and a

---

[2] *Household Finance, supra,* footnote 1, at page 55, 98 N. W. (2d) at page 392; *W. H. Hobbs Supply Co. v. Ernst* (1955), 270 Wis. 166, 169, 70 N. W. (2d) 615, 617; *Larson, supra,* footnote 1, at page 475, 66 N. W. (2d) at page 182.

[3] *Household Finance, supra,* footnote 1.

purpose of inducing the respondents to act upon these false statements.

Of course, no appellant admitted to an intent to defraud respondents. The record does not show who filled out the application or contacted the Walworth county credit bureau. Streuly took the Fifth amendment and Mrs. Streuly testified that while she did not volunteer any information to the Midwest salesman, Mr. Henry Kreuser, had the misrepresentations been on the application, she would not have signed. The salesman left Midwest just after the Streuly's outstanding debts were paid off and was not called to testify. The Scieszinskis denied that they completed the form and pointed out that they were not present at the signing. However, the application sent to First National was signed by another brother (Thomas) who was authorized to bind the partnership. In endorsing the Streulys' note to Allied sometime after January 30, 1960, Midwest (by James Scieszinski) warranted that:

"the total consideration for which this note was executed and delivered by maker was labor and/or materials, all of which has been furnished and/or completed."

On February 20, 1960, after the improvements were made, the Streulys signed a completion certificate for First National which recited:

"I (we) further certify that no cash payment has been given or promised me (us) nor have I (we) been guaranteed any cash bonus or commission on future transactions as an inducement to consummate this transaction. . . ."

On behalf of Midwest, Ed Scieszinski also certified in the same document that:

"(1) The work or material as specified above constitute the entire consideration for which the loan is made. . . . (3) This contract contains the complete agreement with the

borrower (4) The borrower has not been given or promised a cash payment nor has the borrower been guaranteed any cash bonus or commission on future transactions as an inducement to consummate this transaction. . . ."

After the certificate was signed, Midwest received a check from First National for $2,291. Within the next few days Midwest paid off Streuly's debts of $1,544.75 to Thorp Finance and $297.25 to Pacific Finance. Allied's manager testified that Streuly had told him in a phone conversation that these debts were paid out of the loan proceeds.

In *Household Finance Corp. v. Christian,*[4] the court found that a representation was made with intent to defraud and for the purpose of inducing the other party to act. There, a borrower who had done previous business with Household desired another loan. He submitted a financial statement listing two debts and stating further, "I have no other debts." After the loan was granted, it was learned that the borrower had many other outstanding debts. The sole issue before the court was whether Household relied on the representations, and the court said:

"We need only say that the record convinces us that the other elements of fraud are proved by clear and convincing evidence."[5]

Appellants contend that because the falsity of the statements could have been easily discovered, respondents cannot bring an action for fraud.[6] The representations were not obviously false. Even assuming that the statements were clearly untrue, this fact could not have been readily ascertained. The difference in the geographic locales of the

[4] *Supra,* footnote 1.

[5] *Household Finance, supra,* footnote 1, at page 56, 98 N. W. (2d) at page 392.

[6] Relying on *Jacobsen v. Whitely* (1909), 138 Wis. 434, 120 N. W. 285.

parties and the fact that neither respondent had ever dealt previously with Streuly made knowledge of any obvious untruth impossible. In addition, as Midwest had previously done between $80,000 and $100,000 worth of business with First National, it was not unreasonable for the bank to rely on the applications. It is true that respondents could not justifiably rely upon obviously false statements, but:

" 'this does not require that he shall meet every positive statement with incredulity and must search to ascertain whether it is false. The law recognizes the duty of each to refrain from even attempted deceit of another with whom he deals, and the right of the latter to assume that he will do so.' " [7]

The court stated in *Jacobsen v. Whitely* [8] that:

"It is an unsavory defense for a man who by false statements induces another to act to assert that if the latter had disbelieved him he would not have been injured."

Appellants also contend that the money used to pay off Streuly's debts came not from Midwest's funds but rather from commissions owed the salesman, Kreuser. Kreuser's benevolence, in turn, was purportedly prompted by Streuly's promise to solicit business for him. This is directly controverted by the testimony of Allied's manager that Streuly said the payments came from the loan proceeds. It is significant that Kreuser left Midwest's employ immediately after the debts were paid off, thus eliminating any possibility of having his sales enhanced by Streuly's efforts. At best, this whole argument appears, as the trial judge declared, "fantastic."

---

[7] *Household Finance Corp., supra,* footnote 1, at page 56, 98 N. W. (2d) at page 392; *Jacobsen, supra,* footnote 6, at page 436, 120 N. W. at page 286.

[8] *Supra,* footnote 6, at page 436, 120 N. W. at page 286.

The Scieszinskis contend that since they had no knowledge of any misrepresentations in the applications, they are not liable. This contention was met in *Pollack v. Reserve Life Ins. Co.* [9] when the court said:

" 'But in such cases the scienter or wrongful intent is not indispensable. If it were the rule that a principal is immune from loss when his duly authorized agent makes false representations inducing a bargain, there would be little safety in a large proportion of the business transactions of daily life. *The seller is bound to know that the representations made by himself or his authorized agent to induce a sale are true.*' "

If we were to assume, contrary to Mrs. Streuly's testimony, that the salesman innocently filled in the blanks according to the Streulys' instructions, it would be clear that, at this point, the Scieszinskis had not as yet participated in any way in any scheme to defraud the respondents. But when the Scieszinskis, through Midwest, paid off Streuly's outstanding debts in violation of their specific agreement with both respondents, they became actively involved in the plot.

Appellants assert that there is no evidence in the record showing a conspiracy between themselves. It is not surprising that in our search of the testimony we find not one appellant admitting co-operation with another. When the Streulys signed the applications and the Scieszinskis forwarded them to the respondents, they set in motion the wheels for the granting of the loans. Appellants did not inform either lender that an identical application was being submitted to the other. Although the evidence is insufficient to show a conspiracy to defraud at the exact time the credit applications were signed, when Midwest (through the

[9] (1962), 15 Wis. (2d) 336, 341, 112 N. W. (2d) 907, 910. See also *Heal v. Stoll* (1922), 176 Wis. 137, 146, 185 N. W. 242, 245.

Scieszinskis) later paid off debts that the borrower was not even supposed to owe, immediately after receiving money from First National and Allied which was specifically earmarked for improvements, there is evidence that the appellants were acting in concert to defraud the lenders, thus satisfying the third element to establish an action for fraud as against each appellant.

We conclude therefore that the fraud findings of the trial court are not contrary to the great weight and clear preponderance of the evidence.[10]

### Bankruptcy.

Appellant Streuly contends that his discharge in bankruptcy bars respondents' action for fraud. The court held in *Household Finance*,[11] that a judgment obtained in such an action:

"is not affected by defendant's discharge in bankruptcy because defendant obtained that sum by false representations. 11 USCA, sec. 35 of the Bankruptcy Act."

### Mitigation of Damages.

The Scieszinskis contend that because respondents did not foreclose the mechanic's lien or sue to have the quitclaim deed to Englund set aside, they have failed to mitigate damages. As the Scieszinskis assigned the lien to Allied, First National could not have foreclosed it. Streuly did not own the property but was in the process of purchasing it from Englund on land contract. Streulys' deeding the land back to Englund for a consideration of less than $100 is indicia of the small equity ($3,500 less $3,330, or $170) he

---

[10] *First Nat. Bank in Oshkosh v. Scieszinski* (1963), 22 Wis. (2d) 30, 125 N. W. (2d) 577.

[11] *Supra,* footnote 1, at page 58, 98 N. W. (2d) at page 393.

had in the property. It would not have been worth Allied's bother or expense to have foreclosed the lien. An action to set aside the deed to Englund would have been futile since Streuly had little or no interest to attach once it was done.

*By the Court.*—Judgment affirmed.