KIEFER, Respondent, v. FRED HOWE MOTORS, INC., Appellant.

*No. 240. Argued April 9, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 288.)

[11] *See Scholz v. Industrial Comm.* (1954), 267 Wis. 31, 64 N. W. 2d 204, 65 N. W. 2d 1.

22

For the appellant there was a brief by *Brenner &
Brenner* of Waukesha, and oral argument by *Thomas S.
Brenner*.

For the respondent there was a brief and oral argument by *Paul C. Konnor* of Milwaukee.

A brief *amicus curiae* was filed by *Wheeler, Van Sickle
& Day* and *Roland B. Day*, all of Madison, for the Wisconsin Automotive Trades Association.

WILKIE, J.  Three issues are presented on this appeal.
They are:

1.  Should an emancipated minor over the age of eighteen be legally responsible for his contracts?

2.  Was the contract effectively disaffirmed?

3.  Is the plaintiff liable in tort for misrepresentation?

*Legal Responsibility of Emancipated Minor.*

The law governing agreements made during infancy
reaches back over many centuries.[1]  The general rule is
that ". . . the contract of a minor, other than for necessaries, is either void or voidable at his option."[2]  The
only other exceptions to the rule permitting disaffirmance
are statutory[3] or involve contracts which deal with duties
imposed by law such as a contract of marriage or an
agreement to support an illegitimate child.[4]  The general
rule is not affected by the minor's status as emancipated
or unemancipated.[5]

Appellant does not advance any argument that would
put this case within one of the exceptions to the general

[1] 2 Williston, *Contracts* (3d ed.), p. 2, sec. 223.

[2] *Grauman, Marx & Cline Co. v. Krienitz* (1910), 142 Wis. 556,
560, 126 N. W. 50.

[3] *See for example,* sec. 48.985 (1), Stats. (contracts for educational loans).

[4] 2 Williston, *Contracts* (3d ed.), p. 14, sec. 228.

[5] *Schoenung v. Gallet* (1931), 206 Wis. 52, 54, 238 N. W. 852.

rule, but rather urges that this court, as a matter of public policy, adopt a rule that an emancipated minor over eighteen years of age be made legally responsible for his contracts.

The underpinnings of the general rule allowing the minor to disaffirm his contracts were undoubtedly the protection of the minor. It was thought that the minor was immature in both mind and experience and that, therefore, he should be protected from his own bad judgments as well as from adults who would take advantage of him.[6] The doctrine of the voidability of minors' contracts often seems commendable and just. If the beans that the young naive Jack purchased from the crafty old man in the fairy tale "Jack and the Bean Stalk" had been worthless rather than magical, it would have been only fair to allow Jack to disaffirm the bargain and reclaim his cow. However, in today's modern and sophisticated society the "infancy doctrine" seems to lose some of its gloss.

Paradoxically, we declare the infant mature enough to shoulder arms in the military, but not mature enough to vote; mature enough to marry and be responsible for his torts and crimes, but not mature enough to assume the burden of his own contractual indiscretions. In Wisconsin, the infant is deemed mature enough to use a dangerous instrumentality—a motor vehicle—at sixteen, but not mature enough to purchase it without protection until he is twenty-one.

No one really questions that a line as to age must be drawn somewhere below which a legally defined minor must be able to disaffirm his contracts for nonnecessities. The law over the centuries has considered this age to be twenty-one. Legislatures in other states have lowered the age. We suggest that the appellant might better seek the change it proposes in the legislative halls rather than this court. A recent law review article in the Indiana Law

---

[6] 30 Kan. City L. Rev. (1962), 230.

Journal explores the problem of contractual disabilities of minors and points to three different legislative solutions leading to greater freedom to contract.[7] The first approach is one gleaned from the statutes of California [8] and New York,[9] which would allow parties to submit a proposed contract to a court which would remove the infant's right of disaffirmance upon a finding that the particular contract is fair. This suggested approach appears to be extremely impractical in light of the expense and delay that would necessarily accompany the procedure. A second approach would be to establish a rebuttable presumption of incapacity to replace the strict rule. This alternative would be an open invitation to litigation. The third suggestion is a statutory procedure that would allow a minor to petition a court for the removal of disabilities. Under this procedure a minor would only have to go to court once, rather than once for each contract as in the first suggestion.

Undoubtedly, the infancy doctrine is an obstacle when a major purchase is involved. However, we believe that the reasons for allowing that obstacle to remain viable at this point outweigh those for casting it aside. Minors require some protection from the pitfalls of the marketplace. Reasonable minds will always differ on the extent of the protection that should be afforded. For this court to adopt a rule that the appellant suggests and remove the contractual disabilities from a minor simply because he becomes emancipated, which in most cases would be the result of marriage, would be to suggest that the married minor is somehow vested with more wisdom and maturity than his single counterpart. However, logic would not seem to dictate this result especially when today a youthful marriage is oftentimes indicative of a lack of wisdom and maturity.

[7] 41 Ind. L. J. (1965–1966), 140.
[8] Cal. Civ. Code Annot., sec. 36.
[9] N. Y. Gen. Oblig. Law, p. 10, sec. 3–105 (McKinney 1964).

*Disaffirmance.*

The appellant questions whether there has been an effective disaffirmance of the contract in this case.

Williston, while discussing how a minor may disaffirm a contract, states:

"Any act which clearly shows an intent to disaffirm a contract or sale is sufficient for the purpose. Thus a notice by the infant of his purpose to disaffirm . . . a tender or even an offer to return the consideration or its proceeds to the vendor, . . . is sufficient." [10]

The testimony of Steven Kiefer and the letter from his attorney to the dealer clearly establish that there was an effective disaffirmance of the contract.

*Misrepresentation.*

Appellant's last argument is that the respondent should be held liable in tort for damages because he misrepresented his age. Appellant would use these damages as a set-off against the contract price sought to be reclaimed by respondent.

The 19th-century view was that a minor's lying about his age was inconsequential because a fraudulent representation of capacity was not the equivalent of actual capacity.[11] This rule has been altered by time. There appear to be two possible methods that now can be employed to bind the defrauding minor: He may be estopped from denying his alleged majority, in which case the contract will be enforced or contract damages will be allowed; or he may be allowed to disaffirm his contract but be liable in tort for damages.[12] Wisconsin follows the latter approach.

[10] 2 Williston, *Contracts* (3d ed.), p. 26, sec. 234.
[11] 1 Ga. L. Rev. (1967), 205, 236.
[12] *Id.*

In *Wisconsin Loan & Finance Corp. v. Goodnough*,[13] the defendant minor was a copartner in a business who had defaulted on a note given to the plaintiff in exchange for a loan. The defendant had secured the loan by fraudulently representing to the plaintiff that he was twenty-one years old. In adopting the tort theory and declining to adopt the estoppel theory, Mr. Chief Justice ROSENBERRY said:

"It is a matter of some importance, however, to determine whether an infant who secures benefits by misrepresenting his age to the person from whom he secured them is estopped to set up his infancy in order to defeat the contract or whether he becomes liable in an action for deceit for damages. In this case, if there is an estoppel which operates to prevent the defendant from repudiating the contract and he is liable upon it, the damages will be the full amount of the note plus interest and a reasonable attorney's fee. If he is held liable, on the other hand, in deceit, he will be liable only for the damages which the plaintiff sustained in this case, the amount of money the plaintiff parted with, which was $352 less the $25 repaid. There seems to be sound reason in the position of the English courts that to hold the contract enforceable by way of estoppel is to go contrary to the clearly declared policy of the law. But as was pointed out by the New Hampshire court, that objection lies no more for wrongs done by a minor by way of deceit than by way of slander or other torts. The contract is not enforced. He is held liable for deceit as he is for other torts such as slander, trover, and trespass.

"It is considered that the sounder rule is that which holds an infant under such circumstances liable in tort for damages." [14]

Having established that there is a remedy against the defrauding minor, the question becomes whether the requisites for a tort action in misrepresentation are present in this case.

[13] (1930), 201 Wis. 101, 228 N. W. 484.
[14] *Id.* at pages 108, 109.

The trial produced conflicting testimony regarding whether Steven Kiefer had been asked his age or had replied that he was "twenty-one." Steven and his wife, Jacqueline, said "No," and Frank McHalsky, appellant's salesman, said "Yes." Confronted with this conflict, the question of credibility was for the trial court to decide, which it did by holding that Steven did not orally represent that he was "twenty-one." This finding is not contrary to the great weight and clear preponderance of the evidence and must be affirmed.

Even accepting the trial court's conclusion that Steven Kiefer had not orally represented his age to be over twenty-one, the appellant argues that there was still a misrepresentation. The "motor vehicle purchase contract" signed by Steven Kiefer contained the following language just above the purchaser's signature:

"I represent that I am 21 years of age or over and recognize that the dealer sells the above vehicle upon this representation."

Whether the inclusion of this sentence constitutes a misrepresentation depends on whether elements of the tort have been satisfied. They were not. In *First Nat. Bank in Oshkosh v. Scieszinski* [15] it is said:

"A party alleging fraud has the burden of proving it by clear and convincing evidence. The elements of fraud are well established:
" ' "To be actionable the false representation must consist, first of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage." ' " [16]

No evidence was adduced to show that the plaintiff had an intent to defraud the dealer. To the contrary, it

---

[15] (1964), 25 Wis. 2d 569, 131 N. W. 2d 308.

[16] *Id.* at pages 572, 573, and cases cited therein.

is at least arguable that the majority of minors are, as the plaintiff here might well have been, unaware of the legal consequences of their acts.

Without the element of scienter being satisfied, the plaintiff is not susceptible to an action in misrepresentation. Furthermore, the reliance mentioned in *Scieszinski* must be, as Prosser points out, "justifiable reliance." [17] We fail to see how the dealer could be justified in the mere reliance on the fact that the plaintiff signed a contract containing a sentence that said he was twenty-one or over. The trial court observed that the plaintiff was sufficiently immature looking to arouse suspicion. The appellant never took any affirmative steps to determine whether the plaintiff was in fact over twenty-one. It never asked to see a draft card, identification card, or the most logical indicium of age under the circumstances, a driver's license. Therefore, because there was no intent to deceive, and no justifiable reliance, the appellant's action for misrepresentation must fail.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. (*dissenting*). The majority opinion on the issue of whether an emancipated minor legally should be responsible for his contracts "doth protest too much." After giving very cogent reasons why the common-law rule should be abandoned, the opinion refrains from reshaping the rule to meet reality. Minors are emancipated by a valid marriage and also by entering military service. If they are mature enough to become parents and assume the responsibility of raising other minors and if they are mature enough to be drafted or volunteer to bear arms and sacrifice their life for their country, then they are mature enough to make binding contracts in the marketplace. The magical age limit of twenty-one years as an indication of contractual maturity no longer has a basis in fact or in public policy.

---

[17] Prosser, *Law of Torts* (3d ed.), p. 731, sec. 103.

My second ground of the dissent is that an automobile to this respondent was a necessity and therefore the contract could not be disaffirmed. Here, we have a minor, aged twenty years and seven months, the father of a child, and working. While the record shows there is some public transportation to his present place of work, it also shows he borrowed his mother's car to go to and from work. Automobiles for parents under twenty-one years of age to go to and from work in our current society may well be a necessity and I think in this case the record shows it is. An automobile as a means of transportation to earn a living should not be considered a nonnecessity because the owner is five months too young. I would reverse.