Rex RITCHIE, Plaintiff-Respondent,†

v.

John W. CLAPPIER and Jim E. Adamson, Defendants-Appellants.

Court of Appeals

*No. 81–2047. Submitted on briefs June 3, 1982.—Decided October 26, 1982.*
(Also reported in 326 N.W.2d 131.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *Robert W. Burg* and *Johns, Flaherty & Gillette, S.C.,* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *Daniel E. Dunn* and *Smyth, Sauer, Becker, Lynch & Smyth, Ltd.,* of La Crosse.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   Defendants appeal from the judgment canceling the plaintiff's quitclaim deed to them on grounds of fraud.  The trial court predicated fraud on two grounds: first, defendants' failure to disclose to plaintiff a legal effect of his deed to them, and, second, a misrepresentation by defendants to plaintiff that the document he signed was only an agreement regarding a rental security deposit.  The dispositive issues are whether defendants had a duty to make the disclosure and whether plaintiff negligently failed to ascertain that the document was a deed.  We conclude that defendants had no duty to make the disclosure and that plaintiff was negligent as a matter of law.  We therefore reverse.

The trial court found that June 1, 1978, defendants subleased part of a La Crosse building to the plaintiff

tavernkeeper for two years. Plaintiff had the option to renew the sublease for ten years. In August 1979 the City of La Crosse notified the parties that it intended to acquire the property and demolish the building. In February and March 1980 plaintiff sought a new location for his tavern. He anticipated he might relocate before the building was demolished. Plaintiff was concerned, however, with defendants' ability or willingness to return his $2,500 security deposit if he relocated before ordered to vacate.

The trial found that March 6, 1980 the parties met at plaintiff's bar. Plaintiff asked defendants to agree to return the security deposit if he relocated before the city required him to vacate. Defendants said they were willing to return the security deposit when plaintiff vacated and that they were willing to put the agreement in writing. Plaintiff repeatedly insisted that there need be nothing in writing but was finally prevailed on to agree to a writing.

The trial court found that later the same day defendants returned to plaintiff's bar with a writing which they represented as the document containing the promise to return the deposit. It is undisputed that one defendant asked plaintiff whether he wanted to consult his attorney before signing the document, and that plaintiff read it, said he would sign without consulting his attorney, and signed it.

The document was a quitclaim deed which provided:

This deed given for the following consideration given by grantees to grantor:
1. When grantees receive payment for the above-described real estate from the City of La Crosse, grantees will immediately give grantor the sum of $2,558.00, which is that portion of the Jurisdictional Offer of January 11, 1980 of the City of La Crosse which said City attributed to the loss of fixtures and improvements belonging to grantor;

2. Grantees will return to grantor all of grantor's security deposit of $2,500.00 for the rental of the above-described property when grantor vacates said premises.

Plaintiff later discovered that the deed had terminated his leasehold interest in the property which might have entitled him to share in the condemnation proceeds. He then brought this action to cancel the deed.

1. *Duty To Disclose*

Relying on *Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 288 N.W.2d 95 (1980), the trial court held that defendants had a duty to disclose to plaintiff that the quitclaim deed would terminate his leasehold interest in the building and his possible interest in the condemnation award. Because that disclosure was not made, the court found that the deed was procured through fraud. We reject the conclusion that the duty exists.

Misrepresentations of law are generally not actionable as fraud. *Bentley v. Fayas*, 260 Wis. 177, 184, 50 N.W.2d 404, 408 (1951). The exception to this general rule was stated in *Rusch v. Wald*, 202 Wis. 462, 464, 232 N.W. 875, 876 (1930) (quoting 1 Bigelow, *Fraud* at 488):

"It is not . . . universally true that a misrepresentation of the law is not binding upon the party who made it . . . . Where one who has had superior means of information professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed, the injured party is entitled to relief as well as if the misrepresentation had been concerning matter of fact."

Here, however, rather than misrepresent the legal consequences of plaintiff's quitclaim deed, defendants failed to disclose those consequences.

Failure to disclose a fact is not fraud in the absence of a duty to disclose. *Ollerman*, 94 Wis.2d at 26, 288

N.W.2d at 99–100 (1980). Whether a duty exists is a question of law. *Ollerman,* 94 Wis.2d at 27, 288 N.W.2d at 100. We are not bound by the trial court's conclusions on questions of law. *First National Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

The *Ollerman* court imposed a duty on a seller of real estate to make a disclosure to a buyer in certain instances:

> [T]he presence of the following elements is significant to persuade a court of the fairness and equity of imposing a duty on a vendor of real estate to disclose known facts: the condition is "latent" and not readily observable by the purchaser; the purchaser acts upon the reasonable assumption that the condition does (or does not) exist; the vendor has special knowledge or means of knowledge not available to the purchaser; and the existence of the condition is material to the transaction, that is, it influences whether the transaction is concluded at all or at the same price.

*Ollerman,* 94 Wis. 2d at 39–40, 288 N.W.2d at 106 (footnote omitted).

The *Ollerman* decision is not controlling. *Ollerman* dealt with a seller's duty to disclose the existence of a hidden physical characteristic of land offered to a buyer —that a well was under the surface and could not be seen. *Ollerman* does not impose a duty to disclose the legal consequences of a conveyance.

The *Ollerman* court recognized that when it imposed a duty on a real estate seller to reveal a physical fact to the buyer, the court was "making a policy determination." 94 Wis. 2d at 27, 288 N.W.2d at 100. We are called on to make a similar policy determination: whether to extend the duty created in *Ollerman.* We decline to extend that duty to require a buyer to disclose to the seller the legal consequences of his conveyance. That would be tantamount to making the buyer the seller's lawyer. If a

duty to disclose is imposed on the buyer, the same duty should be imposed on the seller. Requiring all parties to a conveyance to disclose the legal consequences to each other is impossible.

Accordingly, we reverse the trial court's finding of fraud based on defendants' failure to disclose the deed's legal effect.

2. *Plaintiff's Negligence*

The trial court also found that defendants fraudulently misrepresented that the quitclaim deed embodied only the parties' agreement regarding the security deposit and that plaintiff was not negligent when he relied on the misrepresentation. Assuming that evidence supports the factual finding of a misrepresentation, we hold plaintiff was not justified in relying on the misrepresentation.

The elements of fraud are a false representation made with intent to defraud and reliance by the injured party on the misrepresentation. *Ins. Co. of North America v. Univ. Mtg. Corp.*, 82 Wis. 2d 170, 175, 262 N.W.2d 92, 94 (1978). The reliance must be "justifiable." *Kiefer v. Fred Howe Motors, Inc.*, 39 Wis. 2d 20, 29, 158 N.W.2d 288, 292–93 (1968). Negligent reliance is not justifiable.

[C]ourts will refuse to act for the relief of one claiming to have been misled by another's statements who blindly acts in disregard of knowledge of their falsity or with such opportunity that by the exercise of ordinary observation, not necessarily by search, he would have known. He may not close his eyes to what is obviously discoverable by him. . . .

*Jacobsen v. Whitely*, 138 Wis. 434, 437, 120 N.W. 285, 286 (1909) (citations omitted). Generally, a person is negligent if he or she signs a contract without ascertaining its contents and is not prevented from doing so, even

if induced to sign by fraudulent misrepresentations. *Bostwick v. Mutual Life Ins. Co.*, 116 Wis. 392, 403, 89 N.W. 538, 541 (1903).

The trial court relied upon *International Milling Co. v. Priem*, 179 Wis. 622, 192 N.W. 68 (1923), and *Standard Mfg. Co. v. Slot*, 121 Wis. 14, 98 N.W. 923 (1904), to support its conclusion that plaintiff was not negligent. According to the *Slot* court:

The fact that a false representation is made in respect to the paper is not necessarily sufficient to excuse such person for affixing his signature thereto in ignorance of its contents, unless under all the circumstances, in view of his duty to give reasonable attention to the protection of his own interests, the false representation was still reasonably calculated to and did induce him not to make the investigation which he otherwise would have made. . . .

*Slot,* 121 Wis. at 23–24, 98 N.W. at 926.

The trial court said that the plaintiff was not negligent because, after he repeatedly insisted that there need be nothing in writing, he finally was prevailed upon to agree to a writing. The court said that plaintiff read enough to know the writing referred to the security deposit and the portion of the condemnation award attributed by the city to plaintiff's fixtures and equipment. It said this was a "rush rush" deal so defendants could exclude plaintiff from his claim against the city. It said that the document appeared to be an agreement rather than a quitclaim deed because the defendants-grantees signed it as well as plaintiff. The court said that plaintiff had a right to believe that the defendants would deal with him honestly.

"Whether the falsity of a statement could have been discovered through ordinary care is to be determined in light of the intelligence and experience of the misled individual. Also to be considered is the relationship be-

tween the parties." *Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 246, 170 N.W.2d 807, 810–11 (1969) (citations omitted).

If the facts are undisputed, whether the party claiming fraud was justified in relying on a misrepresentation is a question of law. *Williams*, 44 Wis. 2d at 246–47, 170 N.W.2d at 811. We conclude on the undisputed facts that plaintiff was not justified because he was negligent.

It is undisputed that plaintiff is a college graduate and a licensed real estate salesman. He had been involved in about twenty closings. He admitted he did not trust defendants. He had the deed in his hands for ten to fifteen minutes. It is on a standard form and bears the caption, "STATE BAR OF WISCONSIN—FORM 3 QUIT CLAIM DEED." He read paragraphs one and two of the document, which are preceded by the following typed sentence, *"This deed* given for the following consideration given by grantees to grantor." (Emphasis added.)

Finding no justifiable reliance, we reverse the trial court's finding of fraud based on defendants' misrepresenting that the deed only embodied the parties' agreement to return the security deposit.

*By the Court.*—Judgment reversed with directions to dismiss the complaint.