**Carl M. JERSILD and Marilyn J. Jersild, Plaintiffs,**

v.

**George E. AKER and John J. Kalfahs, Defendants.**

**No. 90–C–292.**

United States District Court, E.D. Wisconsin.

June 10, 1991.

Ross & Stevens by Patience D. Roggensack, Madison, Wis., for plaintiffs.

Druck & Swartzberg by John G. Movroydis, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On March 23, 1990, the plaintiffs, Carl M. Jersild and Marilyn J. Jersild, filed this tort action alleging securities fraud, statutory fraud, and common law fraud by the defendants, George E. Aker and John J. Kalfahs. Federal jurisdiction is based upon diversity of citizenship, *see* 28 U.S.C. § 1332(a)(1). The defendants have filed a motion for summary judgment. The plaintiffs oppose that motion and have filed a motion to strike certain affidavits filed by the defendants. The motions will be denied.

### I.

The action stems from a single transaction involving the stock of Jersild Knitting Corporation ("the corporation"), a closely-held corporation. Defendant George Aker was chairman of the board of directors of the corporation; defendant John Kalfahs was president and also a director of the corporation. At one time, these defendants (and their spouses) collectively owned 75 percent of the corporation's stock; in 1986, they sold 60 percent of the corporation to Mill Creek Ventures of Neenah, Inc. (Mill

Creek Ventures), an investment group headed by Thomas J. Hoffmaster.

Up to that time, the corporation was essentially family-owned: defendant Kalfahs is the grandson of the founder of the corporation; defendant Aker's wife is the granddaughter of the founder. Plaintiff Carl Jersild is a cousin both of defendant Aker's wife and defendant Kalfahs. An employee of the corporation since 1960, Mr. Jersild had been vice president of sales for the corporation since 1984; his wife, Marilyn, also a plaintiff in this action, had also worked in retail sales for the corporation.

The corporation limped through the mid–1980's when its sales dropped and its losses mounted. When sales fell below projections in 1986, Mr. Aker found the corporation to be in need of "sufficient funds to be able to continue with [its] good operation." Aker Deposition at 44 [hereafter "Aker Dep. at ____"]. In March 1987, Mr. Aker, ostensibly to gain at least a portion of the funds needed by the corporation, approached Mr. Jersild with the opportunity to purchase stock from the corporation. Mr. Jersild recounts that he was "flattered" with the invitation to become a stockholder. Carl Jersild Affidavit at 2 [hereafter "C. Jersild Aff. at ____"]. It was this flattering invitation that seems to have given rise to the plaintiffs' action.

Mr. Jersild asserts that he then had little knowledge of the financial condition of the corporation, including its debt, despite the fact that he was then its vice president of sales. C. Jersild Aff. at 2–3. Notwithstanding his contention that he was never permitted access to detailed financial records of the corporation, Mr. Jersild, as a corporate officer, regularly attended board meetings where such matters were discussed. Carl Jersild Deposition at 36–37 [hereafter "C. Jersild Dep. at ____"]. Nevertheless, the plaintiffs assert that defendants Aker and Kalfahs treated Mr. Jersild as an outsider and responded to his requests for financial information by telling him that the information was "privileged." C. Jersild Aff. at 4; see also Thomas Hoffmaster Deposition at 30–31

(Mr. Jersild "was not considered an insider") [hereafter "Hoffmaster Dep. at ____"].

However, Mr. Jersild, as a corporate officer, was certainly not without independent means of obtaining significant information about the financial health of the corporation. The evidence suggests that Mr. Jersild had at least some access to knowledge of the financial plight of the corporation. For example, his position as vice president of sales, at the very least, irresistibly exposed him to information regarding the decreasing volume of sales of the corporation. It is reasonable to believe that Mr. Jersild had first-hand knowledge of the status of what probably was the corporation's primary source of revenue. In short, as vice president of sales, Mr. Jersild had a unique perspective from which to assess an important facet of the corporation's financial health.

Nevertheless, Mr. Jersild was *not* privy to certain significant information regarding the financial condition and the future of the corporation. For example, in early 1987, pursuant to a stockholder agreement, Mill Creek Ventures, the majority stockholder, had made a $200,000 cash call on defendants Aker and Kalfahs; Mill Creek Ventures could have closed the corporation if defendants Aker and Kalfahs did not come up with that amount of cash. At that time, Mr. Kalfahs contributed $100,000. Mr. Aker disclosed that his plan was to "contribute" his personal shares, ten percent of the corporation, to the corporation for resale in order to enable the corporation to raise $100,000. Aker Dep. at 50–51. The plaintiffs suggest that Mr. Aker was relieved of having to meet the cash call by "giving" 150 shares of stock back to the corporation in February 1987.

The shares that Mr. Aker "gave" back to the corporation were those soon sold to the plaintiffs. In fact, there is no dispute that during this time Mr. Aker invited Mr. Jersild to purchase those 150 shares for $100,000; Mr. Aker also told Mr. Jersild that he could purchase half of those shares—five percent of the corporation—for $50,000. C. Jersild Dep. at 85–87; Aker Dep. at 51. Notably, there is no evidence suggesting

that defendant Aker made any additional representations. Moreover, the plaintiffs failed to proffer any evidence demonstrating that defendant Kalfahs made any representations of that sort. Mr. Jersild candidly admitted that Mr. Kalfahs was merely a "bystander in the negotiations." C. Jersild Dep. at 86. The plaintiffs charge but one representation to defendant Kalfahs: that he answered "fine" when Mr. Jersild asked him how things were going with the corporation, prior to Mr. Jersild's decision to purchase the stock. C. Jersild Dep. at 54. However, Mr. Jersild conceded that he had not asked Mr. Kalfahs that question for the purpose of buying stock in the corporation. C. Jersild Dep. at 54.

Nevertheless, the plaintiffs have demonstrated that the corporation's certified public accountants had on February 27, 1987, issued an opinion, based upon preliminary balance sheets, showing the corporation then to have a net worth of $76,798.19. Plaintiffs' Exhibit. This is uncontroverted. In his deposition, Mr. Aker admitted that the corporation's accountants had valued the corporation at $76,798.19 at the end of 1986. Aker Dep. at 10. This information certainly would have interested the plaintiffs as they were considering whether to purchase the corporation's stock; without it, the plaintiffs were at a great disadvantage.

However, the evidence also demonstrates that Mr. Jersild consulted with these very accountants as he weighed the decision whether to accept Mr. Aker's invitation to purchase the corporation's stock—presumably for that very reason. Francis Simonis Deposition at 6–7; James E. Osborn Deposition at 4–5. Furthermore, the defendants have skillfully abstracted Mr. Jersild's deposition testimony to demonstrate his awareness of the financial ill health of the corporation during the relevant period of time. C. Jersild Dep. at 76; see also Marilyn Jersild Deposition at 11–12 (acknowledging that she was aware that the corporation was "having problems") [hereafter "M. Jersild Dep. at ____]. The defendants urge that the plaintiffs chose to ignore risks known to them and that Mr. Jersild conducted his own economic analysis of the corporation based on his own general knowledge as he decided whether to purchase the stock. See C. Jersild Dep. at 52–53 (attributing drop in sales to a down cycle in the market). The evidence also shows that the plaintiffs had several weeks to make their investment decision.

Furthermore, there is telling evidence to suggest that Mr. Jersild, perhaps like many investors who later become plaintiffs, was enthusiastic and optimistic—if overly so—about gaining a substantial ownership stake in the corporation. C. Jersild Dep. at 28. The defendants also suggest that the plaintiffs purchased the stock for other reasons than as a direct financial investment. For example, Mr. Jersild acknowledged that one of his motivations for purchasing stock in the corporation was to assure the board of directors of his loyalty and commitment. C. Jersild Dep. at 26–27. Mr. Hoffmaster, who headed Mill Creek Ventures, was not completely satisfied with Mr. Jersild's work performance (and had made that point clear to Mr. Jersild). Hoffmaster Dep. at 22, 66. Mr. Jersild was aware that Mr. Hoffmaster could have fired him and, further, that Mr. Hoffmaster would be pleased to learn that Mr. Jersild had made an investment in the corporation. C. Jersild Dep. at 174–76; M. Jersild Dep. at 10.

It is undisputed that on March 31, 1987, Mr. Jersild paid $100,000 for 150 shares of the corporation's stock, a ten percent holding. The corporation's sales continued to dwindle, and its debt mounted until September 1988, when Mill Creek Ventures closed the corporation. At that time, the plaintiffs lost their investment. The plaintiffs now assert that the stock they purchased was practically worthless when it was purchased and that the defendants perpetrated a fraud upon them.

## II.

The plaintiffs assert three claims, each under Wisconsin law: a violation of civil liabilities provision of the Wisconsin Uniform Securities Law, Wis.Stat. § 551.59(1)(a) (prohibiting fraud in connec-

tion with the sale of securities as described in Wis.Stat. § 551.41); a violation of a statutory proscription of fraudulent representations, Wis.Stat. § 100.18 (prohibiting, among many other things, fraudulent representations in connection with the marketing and sale of goods and services); and common law fraud, *see Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 25, 288 N.W.2d 95 (1980).

■ The court notes that the private damages provision of the securities law does not preempt common law remedies, such as those asserted by the plaintiffs. *Esser Distributing Co. v. Steidl*, 149 Wis.2d 64, 67–68, 437 N.W.2d 884 (1989) (identifying the differences between the two causes of action of statutory securities fraud and common law fraud). The same is true for claims under the consumer fraud statute, which may co-exist with the other claims, *see Lueck's Home Improvement, Inc., v. Seal Tite National, Inc.*, 142 Wis.2d 843, 845, 419 N.W.2d 340 (Ct.App. 1987).

### A.

The Wisconsin securities laws contain a civil liability section, Wis.Stat. § 551.59, which provides, in pertinent part, that

> Any person who offers or sells a security in violation of ... [Wis.Stat. § ] 551.-41 ... is liable to the person purchasing the security from him or her....

Wis.Stat. § 551.59(1)(a).

Referenced in the civil liability section is Wis.Stat. § 551.41, which prohibits fraud in connection with the sale of securities. That section states as follows

> It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:
>
> (1) To employ any device, scheme or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Thus, the plaintiffs' securities fraud claim is enabled by § 551.59(1)(a), but rooted substantively in § 551.41.

However, § 551.59 also includes the following provision:

> A person who sells a security in violation of s. 551.41(2) is not liable under par. (a) if the purchaser knew of the untrue statement of a material fact or omission of a statement of a material fact or the person sustains the burden of proof to establish that he or she did not know and in the exercise of reasonable care could not have known of the untrue statement or omission.

Wis.Stat. § 551.59(1)(b).

This provision affords those persons charged with a violation of § 551.41(2) with means of escaping civil liability.

### B.

The statute governing civil liability for fraudulent representations in connection with the marketing of goods and services, Wis.Stat. § 100.18(1), prohibits persons from, among other things intentionally inducing the public to purchase securities, either directly or indirectly, by an "announcement, statement or representation contain[ing] any assertion, representation or statement of fact which is untrue, deceptive or misleading."

Although the statute seems to have been enacted to protect the public from fraudulent advertisements and other marketing practices, the section has also been applied to factual representations made in private conversations to private purchasers, *see State v. Automatic Merchandisers, Inc.*, 64 Wis.2d 659, 664, 221 N.W.2d 683 (1974) (one person may constitute "the public" under § 100.18).

### C.

Under Wisconsin law, the elements of common law fraud have been defined as follows:

(1) a false representation, (2) made with the intent to defraud and for the purpose of inducing another to act upon it, and (3) actually inducing another to rely and act upon that representation, causing injury or damage.

*Green Spring Farms v. Kersten,* 136 Wis.2d 304, 318 n. 5, 401 N.W.2d 816 (1987); *see also Ollerman v. O'Rourke Co.,* 94 Wis.2d 17, 25, 288 N.W.2d 95 (1980).

The false representation must ordinarily be one of fact. *Lundin v. Shimanski,* 124 Wis.2d 175, 184, 368 N.W.2d 676 (1985); *Williams v. Rank & Son Buick, Inc.,* 44 Wis.2d 239, 242, 170 N.W.2d 807 (1969). Furthermore, it is well-settled in Wisconsin law that a representation of purchase price, absent proof of artifice or trick, will be treated as an opinion of the value rather than as a representation of fact. *Cf. Kraft v. Wodill,* 17 Wis.2d 425, 431, 117 N.W.2d 261 (1962); *Morgan v. Hodge,* 145 Wis. 143, 148, 129 N.W. 1083 (1911).

While the law as stated presupposes that an affirmative representation has been made, there are circumstances under which the failure to disclose a material fact may be actionable as fraud—namely when the person who has failed to disclose the fact had a legal duty to do so. *See, e.g., Ollerman,* 94 Wis.2d at 26, 288 N.W.2d 95 ("If there is a duty to disclose a fact, the failure to disclose that fact is treated in the law as equivalent to a representation of the nonexistence of the fact."); *Ritchie v. Clappier,* 109 Wis.2d 399, 326 N.W.2d 131 (Ct.App. 1982).

The determination of the existence of a legal duty is an issue of law, requiring a policy determination. *Ollerman,* 94 Wis.2d at 27, 288 N.W.2d 95. In the latter case, the Wisconsin Supreme Court looked to the Restatement (Second) of Torts § 551 for guidance in making that determination, *see* 94 Wis.2d at 36–37 nn. 17–18, 288 N.W.2d 95. Accordingly, in the absence of any controlling Wisconsin authority, this court will look to the Restatement (Second) of Torts § 551 in its attempt to determine whether a duty arose under the circumstances presented in this action. That sec-tion of the Restatement provides in perti-nent part:

One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the trans-action is consummated,

\* \* \* \* \* \*

(e) facts basic to the transaction, if he knows that the other side is about to enter into it under a mistake as to them, and that the other, because of the rela-tionship between them, the customs of the trade or other objective circum-stances, would reasonably expect a dis-closure of those facts.

Restatement (Second) Torts § 551(2).

Following the Restatement, Wisconsin law draws a distinction between "basic facts" and "material facts":

A basic fact is a fact that is assumed by the parties as a basis for the transac-tion itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter the transaction, but do not go to its essence. These facts may be material, but they are not basic.

*Ollerman,* 94 Wis.2d at 38, 288 N.W.2d 95 (citing Comment j to the Restatement (Sec-ond) of Torts § 551).

In *Ollerman,* the court also looked to Comment 1 to the Restatement, which notes that § 551(2)(e) has been applied to those cases "in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap. . . ." 94 Wis.2d at 37, 288 N.W.2d 95. Thus, Wisconsin law burdens the parties to a transaction with a duty to disclose certain "basic facts"; the nondisclosure of those facts is of the same legal effect as an affirmative representation of their nonex-istence.

Of course, it is unnecessary to determine whether a duty to disclose exists where the defendant has engaged in the active con-

cealment of a material fact; in such cases, the defendant will be subject to liability as if he has stated the nonexistence of that fact, *see Ollerman*, 94 Wis.2d at 31 & n. 13, 288 N.W.2d 95 (*quoting* Restatement (Second) of Torts § 550). Moreover, even in the absence of an affirmative oral representation, conduct by the defendant that creates an "impression" upon the plaintiff may be actionable if it is "capable of being turned into a statement of fact." *Lundin v. Shimanski*, 124 Wis.2d 175, 185 & n. 5, 368 N.W.2d 676 (1985); *Scandrett v. Greenhouse*, 244 Wis. 108, 113, 11 N.W.2d 510 (1943).

■ Under Wisconsin law, a party asserting that a fraud has been perpetrated must prove the elements of fraud by clear and convincing proof. *Lundin*, 124 Wis.2d at 184, 368 N.W.2d 676. Also, that party's reliance upon the alleged misrepresentation must be "justifiable"—that is, not negligent (unreasonable). *Ritchie*, 109 Wis.2d at 404, 326 N.W.2d 131; *Kiefer v. Fred Howe Motors, Inc.*, 39 Wis.2d 20, 29, 158 N.W.2d 288 (1968).

### III.

■ Rule 56, Federal Rules of Civil Procedure, provides that summary judgment shall be entered upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." As the Supreme Court has described the procedure, the defendants, as movants, have the initial burden of demonstrating that there is no genuine issue of material fact; however, the plaintiffs, as nonmovants, retain the burden of producing evidence that would support a jury verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 267, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Accordingly, the defendants' motion for summary judgment can be granted by either of two paths: (1) if the plaintiffs fail to set forth evidence demonstrating that they are entitled to recover under any of their claims, or (2) if the plaintiffs do make

the requisite evidentiary showing, but the defendants demonstrate both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. However, the court is mindful that while the plaintiffs, as nonmovants, must come forth with their evidence in support of each element of each of their claims, "the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### A.

■ The plaintiffs have failed to demonstrate that the sale was accompanied by any affirmative misrepresentations of the ordinary sort. There is no genuine dispute that the only representation made by defendant Aker prior to the sale was that $50,000 would buy five percent of the corporation's stock and $100,000 would buy ten percent of the corporation's stock. There is but one representation charged to defendant Kalfahs: that he at some point prior to the sale told Mr. Jersild that the corporation was doing "fine." The plaintiffs would characterize these statements as *mis*representations of fact. Defendant Aker suggests that his representation was merely the purchase price of the stock; defendant Kalfahs urges that his representation was simply a passing opinion that was in no way intended to induce any action by Mr. Jersild. Without more, the plaintiffs' failure to demonstrate specifically that either defendant made a false statement of fact would be fatal to both the plaintiffs' statutory and common law fraud claims. *See* Wis.Stat. § 100.18(1) (prohibiting *untrue* statements of fact); *Ollerman*, 94 Wis.2d at 26, 288 N.W.2d 95 (no liability for nondisclosure of facts absent a duty to disclose those facts).

■ However, there *is* more. Mr. Aker's representation of purchase price occurred under circumstances that suggest it be treated not as an opinion of the value of the stock but rather as a representation of fact (namely that the stock *had* substantial value to the plaintiffs). The fact that defendant Aker was able to escape his $100,-

000 cash call by Mill Creek Ventures by enlisting the plaintiffs' investment suggests that a reasonable jury could find that an artifice or trick was underfoot.

Viewing this evidence in the light most favorable to the plaintiffs, a jury could find that the price Mr. Aker set for the stock had little to do with the actual value of the corporation but more to do with the amount of the cash call. The jury might also find that the defendants actively concealed material facts, such as the corporation's debt, from the plaintiffs in an effort to gain the funds they needed to satisfy their personal obligations to Mill Creek Ventures. The jury could further find that the defendants, through their conduct, created in the minds of the plaintiffs a false impression that all was well with the corporation and that the stock was worth the price asked.

Furthermore, the extent of the insolvency of the corporation was a basic fact that the defendants were burdened with a duty to disclose to the plaintiffs. The evidence suggests that the defendants did not discharge that duty. There is no dispute that the essence of the bargain contemplated by the plaintiffs was their belief that the corporation could and would pull through its financial difficulties; that the corporation was ostensibly on the verge of financial collapse was a "basic fact" that surely would have been of vital interest to the plaintiffs. That fact, and others like it, should have been disclosed to the plaintiffs. On the present record, I believe that there is evidence that could reasonably convince the jury that the defendants misled the plaintiffs by appearances or engaged in a form of swindling by hiding facts from the plaintiffs.

On the other hand, it may be shown at trial that Mr. Jersild was aware of all basic facts. For now, the court is satisfied that even if the plaintiffs knew that the corporation was in a shaky financial condition, under Wisconsin common law and under Wis.Stat. § 100.18, the defendants were not entitled to view that as a license to commit a fraud upon them.

The court concludes that the evidence would permit a reasonable jury to find that the defendants acted intentionally and induced the plaintiffs to purchase the stock, that the plaintiffs relied upon facts as represented (or as omitted) by the defendants in deciding whether to purchase the stock, and that the plaintiffs ultimately suffered a pecuniary loss as a result. This would entitle the plaintiffs to recovery on their claims both under Wis.Stat. § 100.18, which requires proof by a preponderance of the evidence, and common law fraud, which requires clear and convincing proof. The defendants' conflicting evidence, which may ultimately defeat the plaintiffs' fraud claims at trial, only serves to show the existence of genuine issues of material fact for trial. The defendants' motion for summary judgment will be denied as it relates to the common law and statutory fraud claims.

B.

■ In addition, the evidence, viewed in the light most favorable to the plaintiffs, also demonstrates that a reasonable jury could find that the defendants have violated the securities laws. The applicable substantive provision of the securities laws, § 551.41(2), contains within it a direct proscription of the very sort of behavior the plaintiffs' evidence attributes to the defendants. Under § 551.41(2), a person, may not "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

Viewing this evidence in the light most favorable to the plaintiffs, I believe that a reasonable jury could find that the plaintiffs were not provided with the full scope of material facts that they were entitled to under the Wisconsin securities laws. The defendants, having told the plaintiff that $100,000 would purchase ten percent of the corporation's stock, were obligated to disclose more facts than that—for example, that that defendants were responding to a cash call by Mill Creek Ventures, and that the stock had just been given to the corporation by one of the defendants—to make that statement not misleading. The jury

reasonably could find that the defendants violated the duty of disclosure imposed upon them by § 551.41(2), and that the plaintiffs were misled to purchase the corporation's stock. Equally compelling is the plaintiffs' evidence that the defendants knew that the corporation's certified public accountants had on February 27, 1987, issued an opinion showing the company to be insolvent, and that the defendants excluded Mr. Jersild from access to detailed financial information about the corporation, despite his repeated requests.

The contradictory evidence submitted by the defendants demonstrates only that there exist genuine issues of material fact for resolution by the jury at trial—namely, whether the defendants disclosed all material facts necessary to make their pre-sale statements not misleading. Furthermore, the defendants have not proffered sufficient uncontradicted evidence to sustain their statutory defense to the plaintiffs' claim, *see* Wis.Stat. § 551.59(1)(b). The defendants have not convincingly demonstrated that the plaintiffs "knew ... of the omission of a statement of a material fact" at the time of the sale; nor have the defendants demonstrated that they "did not know and in the exercise of reasonable care could not have known of the ... omission" of material facts.

Accordingly, the court will also deny the defendants' motion for summary judgment as it relates to the plaintiffs' claims under the securities laws.

## ORDER

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is denied, with costs.

IT IS ALSO ORDERED that the plaintiffs' motion to strike certain affidavits be and hereby is denied as moot.