# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 9, 2011

No. 10-50683

Lyle W. Cayce
Clerk

In the Matter of: LOTHIAN OIL INCORPORATED

Debtor

-------------------------------------------------------------------------

ISRAEL GROSSMAN,

Appellee Cross-Appellant

LISTOKIN TRUST, SHORIVGER TRUST,
AKBERALI KHAKEE PENSION PLAN, LOTHIAN CASSIDY, L.L.C.,
SHOSHANA TRUST, DEUTSCH-SOKOL TRUST,
ANNA MEISHER PENSION PLAN,
731 895 866, L.L.C., PENSION SOLUTIONS, L.L.C., MYG TRUST,
HERZBERG FAMILY TRUST, JESSICA SOKOL,

Cross-Appellants

v.

LOTHIAN OIL INCORPORATED, Jointly Administered Member Cases;
Lothian Oil (USA) Inc., Lothian Oil Texas I, Inc., Lothian Oil Texas II, Inc.,
Lothian Oil Investments I, Inc., Lothian Oil Investments II, Inc., and
LeaD I JVGP, Inc.,

Appellant Cross-Appellee

Appeals from the United States District Court
for the Western District of Texas

No. 10-50683

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Chief Judge:

This case reaches us after extensive litigation in the bankruptcy and district courts. It also brings a host of motions in its wake. One of the disputes—whether the bankruptcy court may recharacterize a claim as equity rather than debt—raises a novel question of law on which this court has yet to speak. The other assertions of error are without merit.

## I.

The parties to this bankruptcy appeal have a business history extending from at least April 27, 2005. On that date, Israel Grossman and the Secretary of Lothian Oil signed a handwritten document that states, in pertinent part:

> I. Grossman loans $200,000 US to Lothian Oil Inc under the following terms:
> I) I. Grossman will receive a 1% royalty to the gross production Lothian Oil receives on the Webb Properties of New Mexico, without any further investment
> ii) I. Grossman will be repaid the $200,000 US from the proceeds of the $0.75 placement or any other equity placements.

The following month, Grossman and the Secretary of Lothian, now identified as Bruce Ransom, signed another document. The May 12, 2005 document bore the title "Loan Agreement" and stated the terms as follows:

> I.  Grossman shall loan (the "Loan") the sum of US $150,000 to Lothian Oil;
> II.  In consideration for the Loan, Grossman shall receive a royalty of one percent of Lothian Oil's share of gross production of oil and gas on the Webb properties in New Mexico without further investment to be made by Grossman;
> III.  Lothian Oil shall repay Grossman the Loan from the proceeds of a $0.75 per share equity placement made in Lothian Oil or from the proceeds, subject always to the Sterling Bank Credit Agreement, of any other equity placement in Lothian Oil, which is currently in compliance.

2

No. 10-50683

Two years later, these agreements would lead to proofs of claim 164 and 171, respectively.

Debtors filed their Chapter 11 petitions on June 13, 2007. Approximately one year later, on June 27, 2008, the bankruptcy court confirmed a plan of liquidation. The bankruptcy case elicited numerous proofs of claim from Appellees, many of which terminated in a settlement agreement dated October 30, 2008. The settlement awarded Grossman $1.025 million in full payment of most of his claims. Grossman remained free to seek court determination of the value of the remaining claims, called the "Undetermined Claims." He did so, and on December 15, 2008, the bankruptcy court held a hearing on the Undetermined Claims. The court rejected all of them. In particular, it held that "proof of claim numbers 164, 171, 172, 175, and 178 assert common equity interests at best and that insufficient evidence of the value of the interests was presented." *In re Lothian Oil, Inc.*, No. 07-7012, Doc #1832 at 2 (Bankr. W.D. Tex. Dec. 17, 2008). As for the remaining Undetermined Claims, the bankruptcy court held that "proof of claim numbers 174, 179, and 180 assert claims against non-debtor entities for which the Reorganized Debtors are not liable." *Id.*

Israel Grossman personally signed the notice of appeal to the district court. The claimants' attorney, Jessica Sokol, did not sign the document, as she was not admitted to practice in the Western District of Texas and had not secured a *pro hoc vice* admission. The other claimants were aware of the deficiency in their notice of appeal on or before April 7, 2009, when the clerk of court sent a Notice of Filing Discrepancies to several of their lawyers. Approximately one month later, on April 5, 2009, Lothian moved to dismiss the appeal. Because Israel Grossman had no authority to sign the notice of appeal for anyone other than himself, the district court held that "the instant appeal

3

No. 10-50683

must be limited to those claims, if any, asserted by Israel Grossman personally." Following the district court's decision, the so-called "Other Claimants" failed to file a notice of appeal.

The district court affirmed in part and reversed in part the bankruptcy court's ruling. It reversed the recharacterization of claims 164 and 171 as equity, "declin[ing] to extend the concept of debt recharacterization to a non-insider creditor." The district court cited this Circuit's 11-factor test for distinguishing between debt and equity. *See Jones v. United States*, 659 F.2d 618, 622 n.12 (5th Cir. 1981). Perceiving a rule against recharacterization for all but "insiders," however, the district court did not apply the factors to the instant case. On all but the recharacterization issue, the district court affirmed the bankruptcy court's ruling in favor of the debtors.

Lothian filed this appeal, challenging the district court's recharacterization decision; Grossman cross-appealed, contesting the remainder of the district court's holdings. He argues for the first time on appeal that the settlement agreement cannot impose a cap on his recovery for the Undetermined Claims because Lothian has opposed Grossman's efforts to recover from third parties, negating consideration for the settlement. We do not reach this newly raised argument, as it is waived. *French v. Allstate Indem. Co.*, 637 F.3d 571, 582-83 (5th Cir. 2011).

**II.**

In reviewing a bankruptcy appeal from the district court, this court "appl[ies] the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). That standard reviews findings of fact for clear error and conclusions of law *de novo*. *Id*. Of particular relevance to this case, the determination that an investment constitutes equity rather than debt is a

4

No. 10-50683

conclusion of law in the Fifth Circuit. *Tex. Farm Bureau v. United States*, 732 F.2d 437, 438 (5th Cir. 1984) (reviewing equity-versus-debt distinction in tax context); *see also In re Submicron Sys. Corp.*, 432 F.3d 448, 456-57 (3d Cir. 2004) (surveying other circuits' standards of review for the equity-versus-debt determination).

## III.

## A. Recharacterization

The district court applied a *per se* rule to prohibit bankruptcy courts from recharacterizing contributions from anyone but corporate insiders. The court therefore omitted any analysis on the merits of whether the agreements between Grossman and Lothian represent debt or equity. We conclude that recharacterization extends beyond insiders and is part of the bankruptcy courts' authority to allow and disallow claims under 11 U.S.C. § 502. On the facts of this case, recharacterization was appropriate.

When a creditor files a timely claim, the Code states that "the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that -- (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b). The Supreme Court has held that the "applicable law" is *state* law: "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 918 (1979). As a result, "there is no reason why such [state law] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S. at 55, 99 S. Ct. at 918. Our analysis of "applicable law" under § 502(b) is therefore an application of state law, unless Congress has stated otherwise.

5

Taken together, *Butner* and § 502(b) support the bankruptcy courts' authority to recharacterize claims.  If a claim asserts a debt that is contrary to state law, the bankruptcy court may not allow the claim.  Moreover, where the reason for such disallowance is that state law classifies the interest as equity rather than debt, then implementing state law as envisioned in *Butner* requires different treatment than simply disallowing the claim.  The Fourth Circuit identified the inadequacy of traditional disallowance in noting that "[w]hen a bankruptcy court disallows a claim, the claim is completely discharged.  By contrast, recharacterization is appropriate when the claimant has *some* rights via-a-vis the bankrupt." *In re Dornier Aviation, Inc.*, 453 F.3d 225, 232 (4th Cir. 2006) (internal citation omitted; emphasis in original).  These rights, fixed by state law, are not irrelevant to the court's decision to disallow a claim.  To the contrary, recharacterizing the claim as an equity interest is the logical outcome of the reason for disallowing it as debt.

Other circuits to have considered this issue have approved recharacterization, but they have generally grounded it in the bankruptcy courts' equitable authority under 11 U.S.C. § 105(a).  *In re Submicron Sys. Corp.*, 432 F.3d 448, 454 n.6 (3d Cir. 2006); *In re Dornier Aviation, Inc.*, 453 F.3d 225 (4th Cir. 2006); *In re Hedged-Invs. Assocs.*, 380 F.3d 1292 (10th Cir. 2004); *In re Autostyle Plastics, Inc.*, 269 F.3d 726, 748-49 (6th Cir. 2001).  *But see In re Pac. Express, Inc.*, 69 B.R. 112 (B.A.P. 9th Cir. 1986) (disallowing recharacterization).  Based on the above analysis, resort to § 105(a) is unnecessary.  Nor is it necessary for courts to be concerned about the interpretive implications of the bankruptcy court's equitable subordination power expressed in 11 U.S.C. § 510(c).  Equitable subordination and recharacterization, although sometimes based on the same facts, are directed at different conduct and have different remedies.  *See In re Autostyle*, *supra.*  And

No. 10-50683

in any event, this court's precedent reflects a cautious view of § 105(a). For example, this court held that § 105 does not authorize bankruptcy courts to punish criminal contempt committed outside the court's presence, in spite of the fact that other courts had approved using that section to authorize bankruptcy courts to punish civil contempt. *Griffith v. Oles (In re Hipp)*, 895 F.2d 1503, 1515 (5th Cir. 1990). We agree with sister circuits' results but not necessarily their reasoning.

In the present case, the district court reversed the bankruptcy court's recharacterization on the basis of its legal conclusion that recharacterization applies only to claims filed by corporate insiders. We decline to impose such a *per se* rule. Unless state law makes insider status relevant to characterizing equity versus debt, that status is irrelevant in federal bankruptcy proceedings.

Consequently, Texas law controls the agreements underlying Grossman's claims in this case. To distinguish between debt and equity, Texas courts have imported a multi-factor test from federal tax law. *Arch Petroleum, Inc. v. Sharp*, 958 S.W.2d 475, 477 n.3 (Tex. Ct. App. 1997) ("For an oft-cited discussion of the distinction between debt and equity, including a list of sixteen distinguishing factors, *see Fin Hay Realty Co. v. United States*, 398 F.2d 694, 696 (3d Cir. 1968)."). Other courts that have permitted recharacterization have also borrowed tests from federal tax cases. *See, e.g., Hedged-Invs.*, 380 F.3d at 1298. In the tax context, this court has employed several multi-factor tests. *See Estate of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972) (13-factor test); *Jones v. United States*, 659 F.2d 618, 622 n.12 (5th Cir. 1981) (11-factor test). In applying these tests, we "consider all the factors and weigh the evidence favoring characterization of the [interest] as debt or equity, while realizing that the various factors are not of equal significance and that no one factor is controlling." *Mixon*, 464 F.2d at 402.

7

No. 10-50683

Although the district court did not review the bankruptcy court's findings, it did not suggest that the facts here oppose a recharacterization. We conclude that under the multi-factor tests, the bankruptcy court committed no error in finding that five of Grossman's claims "assert common equity interests at best." The bankruptcy court's written order incorporated by reference the findings of fact and conclusions of law announced at a hearing two days earlier. Among the topics discussed at that hearing were the factors listed in *Jones*, in particular the fact that Grossman would be paid from royalties and "equity placements" as well as the lack of a specified interest rate, term of repayment, and maturity date. The court ruled that despite language referring to a "loan," the investments underlying claims 164, 171, and 178 were equity. The main factor behind this ruling was the inclusion of a royalty payment, which depended on the success of Lothian's business, instead of a prescribed interest rate.

Because Texas law would not have recognized Grossman's claims as asserting a debt interest, the bankruptcy court correctly disallowed them as debt and recharacterized the claims as equity interests. Moreover, because insiders and non-insiders alike can mischaracterize their claims in contravention of state law, we decline to limit recharacterization to insider claims.

## B. Appellants Other than Grossman

The district court dismissed appeals by all appellants other than Israel Grossman, as only Grossman signed the notice of appeal to the district court. The Federal Rules of Civil Procedure require that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a); *see also* Bankr. R. 9011(a). Rule 9011(a) requires a court to strike an unsigned document "unless the omission is promptly corrected after

No. 10-50683

being called to the attorney's or party's attention." *Id.* The non-Grossman appellants cite a number of cases for the proposition that the signature requirement is not jurisdictional and may be cured. *Becker v. Montgomery*, 532 U.S. 757, 121 S. Ct.1801 (2001), *Wash v. Johnson*, 343 F.3d 685, 689 (5th Cir. 2003) (citing *Becker*). This correct statement of law does not change the fact that they failed to correct their pleadings, despite notice from the clerk of court. The district court's dismissal was therefore correct.

### C. Grossman's Other Undetermined Claims

After eliminating the claims that are properly characterized as equity rather than debt and the claims by parties other than Grossman, only a single claim remains. That claim, 174, concerns a contractual obligation, which the bankruptcy court found to exist between Grossman and an entity that is not part of this bankruptcy. The bankruptcy court dismissed the claim, and the district court affirmed. On appeal, Grossman concedes that the contract does not bind any of the debtor entities. Instead, he seeks payment on "an implied contract" because "Debtors benefitted from such financing efforts" even though they were not parties to the agreements. The record does not support Grossman's claim that his services redounded to the debtors' benefit. He cites no evidence to support this claim and apparently failed to do so in the courts below. The bankruptcy and district courts were therefore correct to disallow claim 174.

### IV.

For the foregoing reasons, we affirm the bankruptcy court's judgment, and in doing so, necessarily reverse the district court's ruling on recharacterization and affirm the judgment of the district court in all other respects.

No.  10-50683

We also GRANT appellants' Motion to Strike Appellee's/Cross-Appellant's Record Excerpts and GRANT Jessica Sokol's motion to withdraw as counsel; all other motions are DENIED.

**AFFIRMED IN PART AND REVERSED IN PART.**