# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2013

No. 11-51082

Lyle W. Cayce
Clerk

In the Matter of:  LOTHIAN OIL, INCORPORATED,

Debtor

------------------------------

ANTI LOTHIAN BANKRUPTCY FRAUD COMMITTEE;
ISRAEL GROSSMAN,

Appellants

v.

LOTHIAN OIL, INCORPORATED, Jointly Administered Member Cases
Lothian Oil (USA Inc.; Lothian Oil Texas I, Inc.; Lothian Oil Texas II, Inc.;
Lothian Oil Investments I, Inc.; Lothian Oil Investments II, Inc.; LeaDI
JVGP, Inc.); NAWAB ENERGY PARTNERS, L.P.; FRIO ENERGY
PARTNERS, LP,

Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:10-CV-2

Before JOLLY, JONES, and GRAVES, Circuit Judges.

No. 11-51082

EDITH H. JONES, Circuit Judge:[*]

In the latest chapter of this controversy, Appellants—the Anti-Lothian Bankruptcy Fraud Committee and Israel Grossman ("Anti-Lothian")—challenge adverse rulings on eight motions by the bankruptcy court for the Western District of Texas. Finding no reversible error of fact or law, we AFFIRM.

## BACKGROUND

Anti-Lothian is an unofficial group of shareholders seeking remedies for alleged fraudulent transfers of property between Lothian Oil ("Debtor") and creditor entities headed by a company called the Belridge Group. On June 13, 2007, Lothian filed for Chapter 11 bankruptcy protection. The same day, motions were filed to approve settlement agreements between the Debtor and two creditors: Nawab Energy Partners, LP ("Nawab") and Frio Energy Partners, LP ("Frio"). These agreements, approved by the bankruptcy court on July 16, 2007 ("2007 Compromise Orders"), involved the settlement of lawsuits previously brought by Lothian to protect properties on which the Belridge Group companies were attempting to foreclose.

Like an earlier group known as the Ad Hoc Committee of Series A Preferred Convertible Shareholders ("AHC"), Appellants claim that conflicts of interest should have required invalidation of these orders, which surrendered the properties at issue without commensurate compensation. A motion was filed by the AHC on June 10, 2008 to set aside the 2007 Compromise Orders under Bankruptcy Rule 9024. The bankruptcy plan was confirmed on June 27, 2008. The plan incorporated the settlements with Nawab and Frio but carved out

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-51082

AHC's right to pursue its 9024 Motion. After the confirmation, most of the members of the AHC settled their claims related to the motion and the bankruptcy court entered an order approving those settlements on December 12, 2008. The attorney for the Appellants at the time, Jessica Sokol, filed but later withdrew an objection to the settlement.

On June 29, 2009, the First Anti-Lothian Bankruptcy Fraud Committee (many Appellants here, including two AHC members who did not settle) filed the First Anti-Lothian Document challenging the 2007 Compromise Orders and requesting that the plan be set aside because of recently-discovered fraud. This document was dismissed without prejudice on September 17, 2009—the day after the Second Anti-Lothian Document was filed by the current Appellants. Rather than asking for the Confirmed Plan to be set aside, the Second Anti-Lothian Document asked the bankruptcy court to "clarify or modify" the plan by, *inter alia*, setting aside the Compromise Orders and other fraudulent transfers.

The bankruptcy court heard arguments on motions related to the Second Anti-Lothian Document (Orders 2333 and 2338) as well as cross-motions for enforcement of the Plan (Order 2334) against the Appellants and their counsel, Sokol, on October 27, 2009. Motions to disgorge the Chief Restructuring Officer's fees (Order 2337) as well as sanction professionals related to the Belridge Group and appoint an impartial trustee (Order 2349) were also argued at that time. Sokol had been previously summoned before the bankruptcy court regarding her *pro hac vice* status, and motions related to that hearing were also before the court. Sokol argued a motion for acceptance of Bankruptcy Rule 2019(a) supplemental documentation and renewal of an emergency cross motion for

No. 11-51082

similar compliance by opposing counsel (Order 2324); the original emergency cross motion that would allow her to continue her *pro hac vice* status after the hearing (Order 2325); and the original emergency cross motion seeking Rule 2019(a) compliance from opposing counsel (Order 2326). The bankruptcy court held against the Appellants and in favor of the reorganized Debtor on each motion. Sokol's previous *pro hac* filings were accepted but she was stopped from continuing such practice and Appellants were not allowed to file further pleadings in the bankruptcy court without prior court approval.

On appeal the district court ruled for the Appellees on all of the orders. Appeals of the three *pro hac vice*–related orders were dismissed because they were noticed out of time, and the other five orders were affirmed. The two orders that served as the primary focus of the district court opinion were related to the Second Anti-Lothian Document (with its 9024 Motion to Set Aside Settlements). Both orders were affirmed because the 9024 Motion to set aside the Compromise Orders was filed after the 180-day window available for challenging the confirmation of a bankruptcy plan under 11 U.S.C. § 1144. The remaining orders were upheld based on inadequate briefing by the Appellants. This timely appeal followed.

**STANDARD OF REVIEW**

When reviewing a bankruptcy appeal from the district court, this court applies "the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). "That standard reviews findings of fact for clear error and conclusions of law *de novo*." *In re Lothian, Inc.*, 650 F.3d 539, 542 (5th Cir. 2011).

No. 11-51082

## DISCUSSION

### I.    The *Pro Hac Vice* Orders

Orders 2324, 2325, & 2326—those related to Sokol's *pro hac vice* status—were signed on October 28, 2009.  The deadline for filing an appeal of an adverse ruling in bankruptcy court was ten days at that time.  FED. R. BANKR. P. 8002(a).  Appellants, however, filed their notice on November 12, 2009.  The district court was, therefore, correct to dismiss these appeals as untimely.[1]

### II.    The Second Anti-Lothian Document Orders

In its Orders 2338 and 2333, respectively, the bankruptcy court denied the Second Anti-Lothian Document's 9024 Motion to Set Aside the Settlements and granted the Debtor's Motion to Dismiss the Second Anti-Lothian Document.  The bankruptcy court held the Confirmed Plan to be final and assumed the 9024 Motion was an attempt to relitigate what already was or should have been litigated by the AHC claimants.  The court rejected the document, in part, as barred by 180-day limitation period for revoking fraudulent plan/confirmation orders.[2]  11 U.S.C. § 1144.  Likewise, the district court relied on limitations in affirming the bankruptcy court, invoking § 1144 as its one "fatal" arrow.

---

[1] An amendment to FRBP 8002 took effect on December 1, 2009, changing the appeal notice deadline to fourteen days.  The notice here would have been out of time, though, even under the new rule.

[2] The bankruptcy court offered five reasons for rejecting Appellants' motions here: (1) lack of standing; (2) limitations; (3) *res judicata*; (4) collateral estoppel; and (5) judicial estoppel.

5

No. 11-51082

Appellants raise several challenges to this reasoning. First, it is argued that the Second Anti-Lothian Document is not an attempt to revoke the Confirmed Plan but merely asks for a modification in which fraudulent transfers and illicit fees are returned to the estate. Also, because the plan itself made room for the initial 9024 Motion by the AHC, the current "attack" on the biased transactions at issue (the Nawab and Frio settlements) is merely in keeping with that carve-out. Any delays in the filing could be excused by newly discovered evidence about the conflicts of interest and the fact that, even if the Appellants are not part of the AHC (two of them were—the MYG Trust and the Herzberg Family Trust), the Second Anti-Lothian Document's claim is "related to" those brought in the AHC 9024 Motion.[3] These arguments fail for multiple reasons.

To begin, the district court was correct to doubt Anti-Lothian's standing. Even if we accept the dubious proposition that the Second Anti-Lothian Document merely sought modification of the plan, only the plan's proponents or the debtor may modify a confirmed plan. 11 U.S.C. § 1127. Anti-Lothian is neither. Permission was not sought from the bankruptcy court to bring a derivative action on the debtor's behalf, *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 252–53 (5th Cir. 1988), nor was futility claimed to excuse such failure. Anti-Lothian thus lacks the requisite standing to make a motion to modify the Confirmed Plan.

More definitively, the Second Anti-Lothian Document fails based on limitations; potential excuses for its lateness are unavailing. 11 U.S.C. § 1144, which allows *revocation* of a fraudulent bankruptcy plan, requires that relief be

---

[3] Section 6.9 of the Confirmed Plan reserved rights to the Debtor to pursue any and all claims related to the AHC Motion.

No. 11-51082

sought within 180 days of confirmation. The one-year limit on Rule 60(b) motions provided in Bankruptcy Rule 9024 is expressly subject to the § 1144 limit. FED. R. BANKR. P. 9024(3). The Second Anti-Lothian Document[4] was filed more than a year after the plan was confirmed. Treated as a motion to revoke confirmation under § 1144, as the district court held, the document is plainly untimely. But even if it is a cognizable Rule 9024 motion, it was filed beyond the rules's one-year deadline. Moreover, the First Anti-Lothian Document cannot be relied on to rescue the filing date since that motion was dismissed and no appeal was filed.

Appellants ask this court to consider excusing the normal limitations on attacking bankruptcy plans because of their recently acquired evidence concerning fraud. Though the "newness" of Appellant's evidence is doubtful, any form of tolling is precluded by the text of both potential avenues for dealing with fraud in this context. Section 1144 and Rule 9024, the latter encompassing Rule 60(b)(3), each explicitly treat fraud. It would make little sense to toll the limitations period of rules designed to deal with fraud because fraud was present.

Alternatively, the carve-out in the Confirmed Plan cannot be used to bring this action for several reasons. First, the plan only preserves *AHC's Rule 9024 Motion*, the one in existence at the time of the confirmation. Plan § 6.9. Second, while the *Debtor* possesses a reservation of rights related to the AHC motion, Appellants do not. *Id.* Even if we were to assume that the meaning of "related to [a specifically named motion]" in Plan § 6.9 can be stretched to include future

---

[4] The district court held that the Second Anti-Lothian Document sought, in substance, either a revocation or a dramatic modification of the confirmation order. While that appears to be correct, the question is unnecessary for us to answer.

7

motions (we doubt that it should), Appellants do not have the authority to bring suit to defend the Debtor's reserved rights. The better interpretation of the plan is that the settlement of the AHC motion extinguished claims related to it.

In sum, the district court would have been on solid ground in rejecting the Second Anti-Lothian document for any number of reasons. Even if further evidence of the conflicts of interest emerged post-confirmation, there was enough in the winter of 2008 for the AHC to obtain a carve-out in the plan to pursue a 9024 Motion and ultimately a monetary settlement (favorable to Israel Grossman, among others) related to the Nawab and Frio Compromise Orders. The carve-out in the plan did not have in mind the scenario of piece-mealing of redundant 9024 claims. Once a bankruptcy plan is confirmed, § 1144 sets the length of time available to challenge it—even when fraud is involved.[5]

## III.　The Remaining Orders

Each of the remaining orders was held to be insufficiently briefed before the district court and, therefore, abandoned. Given the Appellants' lack of systematic attention to each of the bankruptcy court's reasons, we uphold the district court's determination. It is not the function of an appellate court—or the district court functioning in an appellate role for the bankruptcy court—to divine arguments on behalf of litigants from a substantial narrative; undeveloped arguments are rightly ignored. *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Nor should this court pass on arguments that were never properly presented to the district court.

---

[5] Appellants' claim that they seek to preserve claims against non-debtors, *i.e.*, claims not covered by § 1144, is meritless. The Compromise Orders, which were recapitulated in the plan, covered those non-debtors as well; only an appeal of the confirmation order could have changed this.

No. 11-51082

## CONCLUSION

This case is epitomized by the Supreme Court's admonition: "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S. Ct. 1644, 1648 (1992).  For the reasons stated above, we **AFFIRM**.