COURT OF APPEALS
DECISION
DATED AND FILED

December 26, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2018AP2455**

Cir. Ct. No. 2015PR63

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

THE ESTATE OF TOM W. SAWYER , BY THE CO-PERSONAL REPRESENTATIVES, KATHLEEN A. FERRY AND KARL W.P. SAWYER,

RESPONDENT,

V.

TIMOTHY SAWYER, DIANE WELLNITZ, ELIZABETH J. NADOW AND LAURA SAWYER,

APPELLANTS,

JOHN SAWYER,

INTERESTED PARTY.

APPEAL from an order of the circuit court for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Timothy Sawyer, Laura Sawyer, Diane Wellnitz, and Elizabeth Nadow ("the Interested Parties") appeal an order ruling that the Estate of Tom W. Sawyer reasonably forgave the remaining balance of a land contract between Beulah Beach, Inc., and his daughter, Kathleen Ferry and her husband James, and denying the Interested Parties' demand that the Ferrys pay the Estate monies on the land contract and satisfy other alleged obligations.   The appellants' position would require undoing a stipulation the parties entered into and that the court signed.   We decline to do so.   We affirm.

¶2    Tom organized Beulah Beach in 1965; he was the sole shareholder, officer, and director.   In 2006, Beulah Beach pledged real property ("the Property") as collateral to secure a $17,000 loan from Peoples Bank; in August 2007, it pledged the Property as collateral to secure an additional $4,000 Peoples Bank loan.   A month later, the Ferrys, whose home is on the Property, purchased it from Beulah Beach on a land contract.

¶3    The land contract provided for fifteen years of interest-only payments, then a payment of the $150,000 principal on September 1, 2022.   The Ferrys made the monthly mortgage payments, paid the real estate taxes, and kept the Property insured.   In 2009, Beulah Beach borrowed $651,000 from North Shore Bank secured by a mortgage on a Rock County property.   The new mortgage did not encumber the Property.

¶4    Tom defaulted on the North Shore loan and in 2011 North Shore commenced a foreclosure action.   In June 2012, the Wisconsin Department of Financial Institutions ("DFI") administratively dissolved Beulah Beach.   In August

2012, North Shore was granted a judgment of foreclosure and the right to a deficiency judgment against Tom and Beulah Beach.

¶5     Tom executed his last will and testament in March 2013. The will provided that Beulah Beach held the Vendor's interest in the land contract, that Tom was Beulah Beach's sole shareholder, and that Beulah Beach was to transfer its interest in the land contract to the Ferrys, who "shall take the … [Property] subject to" any outstanding mortgage on the Property.

¶6     In April 2013, North Shore was granted a $179,408.63 joint-and-several deficiency judgment against Tom and Beulah Beach (the "North Shore Judgment"). Prior to that, in 2012 or 2013, in consideration of the Ferrys' financial concerns, work the Ferrys had performed on Tom's farm, and Kathleen's care for him, Tom orally agreed to allow the Ferrys to forego payments on the land contract. Kathleen put the forgiven sum at approximately $12,000.00. The Interested Parties claimed it was $17,000.

¶7     Tom died in December 2014. Kathleen and her brother Karl Sawyer were named co-personal representatives. In 2015, Kathleen and Karl filed the inventory for the estate. It listed the Property as an asset, disclosed the sale of the Property to the Ferrys pursuant to the land contract, and specifically provided, "Land Contract forgiven upon passing of Decedent." None of the Interested Parties objected to the inventory.

¶8     North Shore filed against the Estate a $195,723.72 claim, which the Estate negotiated down to $160,000. The settlement was premised upon prompt liquidation of certain assets titled in Beulah Beach and the Estate and payment of the proceeds to North Shore.

¶9 As the Estate succeeded Tom as sole shareholder of the administratively dissolved Beulah Beach, Kathleen and Karl undertook to wind up Beulah Beach's business affairs. Their search to discover Beulah Beach's debts disclosed only the North Shore claim and a Wisconsin Department of Revenue tax warrant. The Estate paid the DOR tax warrant from the proceeds of the sale to Karl of a vacant property. A title search of the Property disclosed the $17,000 and $4,000 Peoples Bank mortgages but not the North Shore Judgment. In line with the Will, the Estate petitioned to convey Beulah Beach's interest in the land contract to the Ferrys. The Interested Parties objected, contending the Ferrys should repay the land contract payments Tom forgave during his lifetime. Based upon the Interested Parties' opposition, the court denied the Estate's request as possibly premature.

¶10 By June 2016, the Estate had satisfied the North Shore Judgment and the North Shore claim was released. The Interested Parties continued to demand that the Ferrys pay the land contract payments Tom forgave during his lifetime. Ultimately, the Ferrys agreed to "repay" the Estate $17,000, fearing the Interested Parties otherwise would refuse to convey to them Beulah Beach's interest in the land contract. The Ferrys also agreed to purchase another parcel of real property from the Estate for $15,500, the full appraised price.

¶11 In December 2016, the parties agreed via a written Stipulation and Order for Transfer of Property to convey Beulah Beach's interest in the land contract to the Ferrys. The stipulation provided that Beulah Beach held the Vendor's interest in the land contract, which interest would be vested in the Estate of Tom W. Sawyer as sole shareholder of the administratively dissolved Beulah Beach; the Estate would convey that interest to the Ferrys; and, simultaneous with the conveyance, the Ferrys would pay the Estate $17,000. The stipulation set forth

no other conditions or reservations; said nothing about the Estate selling the Property to replace monies paid to North Shore; did not condition conveyance of Beulah Beach's interest in the land contract upon payment of any other sums by the Ferrys, either at closing or in the future; and did not require a mortgage against the Property as security for any other claims. Attached to the stipulation was a DFI document certifying the June 12, 2012 dissolution of Beulah Beach. All parties and their counsel signed the stipulation. The court approved it.

¶12  In September 2018, the Interested Parties asked the court to invalidate the stipulation on grounds that counsel for the Estate and the Ferrys misrepresented the status of Beulah Beach to the Ferrys' benefit; that Beulah Beach, not the Estate, should have paid off the remaining North Shore judgment lien; and that the Estate had no legal authority to transfer Beulah Beach's interest in the land contract into the Estate or to forgive the obligation for that debt. They asked the court to require the Ferrys to reimburse the Estate for the principal amount of the land contract. As the Interested Parties had not brought a motion to reopen the Stipulation and Order, the court rejected their requests. They appeal.

¶13  On motion, a court may relieve a party from a judgment, order or stipulation for various reasons. WIS. STAT. § 806.07(1)(a)-(h) (2017-18).[1] One reason is misrepresentation by an adverse party. Sec. 806.07(1)(c). Whether to grant relief from judgment lies in the discretion of the circuit court. *See Mullen v. Coolong*, 153 Wis. 2d 401, 406, 451 N.W.2d 412 (1990).

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

¶14    The Interested Parties' challenge to the Stipulation and Order fails for several reasons.  First, as the court noted, the only way it could address "the alleged misrepresentations that caused the stipulation to become an order would be through a proper motion to reopen."  No such motion was granted, or even filed.

¶15    Second, it would have been untimely.  The court approved and signed the stipulation and order on December 22, 2016.  Not until May 2, 2018, approximately seventeen months later, did the Interested Parties submit their first ostensible objection—a "status report" alleging improprieties in the Estate's conveyance of the Vendor's interest in the land contract to the Ferrys and seeking a trial date.  A motion brought pursuant to WIS. STAT. § 806.07(1)(c) must be brought "not more than one year after the judgment was entered or the order or stipulation was made."  Sec. 806.07(2).

¶16    Third, the Interested Parties' argument fails on the merits.  They contend the Stipulation and Order was not "a final distribution," but "only an intent to transfer legal title to the Ferrys … subject to a final accounting of the estate, phrasing that was not included in the stipulation itself."  They assert they were "induced to sign the stipulation" because the corporate legal status of Beulah Beach was fraudulently misrepresented.

¶17    The elements of fraud are a false representation made with intent to defraud and justifiable reliance by the injured party on the misrepresentation. *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131 (Ct. App. 1982). "Negligent reliance is not justifiable." *Id.*

¶18    The personal representatives misrepresented nothing.  The parties all agreed to follow Tom's intent when they signed the stipulation two years after his death.  The stipulation plainly provided that, although administratively dissolved,

Beulah Beach retained an interest in the Property. The Interested Parties knew or should have known that Tom intended to forgive the land contract balance at his passing because each had received a copy of his will by April 2013, well before Tom died. As the Inventory was filed in August 2015, they also knew or should have known that the personal representatives intended to honor their father's wishes and forgive the land contract balance. "Unambiguous language in a will must be given effect as it is written without regard to the consequences." *Firstar Trust Co. v. First Nat'l Bank*, 197 Wis. 2d 484, 496, 541 N.W.2d 467 (1995).

¶19    Yet, the Interested Parties apparently made assumptions that Beulah Beach had no legal effect on or interest in anything and now believe the Estate should not have allowed them to make those assumptions. Incorrect assumptions are not the same as misrepresentations. Three of the Interested Parties were represented by counsel, who himself reviewed and signed the stipulation. If they did not understand certain legal implications or if they believed language or conditions they now deem pivotal should have been included in the stipulation, they should have clarified matters with their counsel before signing. "[A] contracting party, not otherwise disabled, is bound by the law to know and understand the terms of the document he or she signs." *Kellar v. Lloyd*, 180 Wis. 2d 162, 174, 509 N.W.2d 87 (Ct. App. 1993) (citation omitted). Relief is not warranted merely because it appears in hindsight to have been a bad bargain. *Schauer v. De Neveu Homeowners Ass'n*, 187 Wis. 2d 32, 37, 522 N.W.2d 246 (Ct. App. 1994).

¶20    As the court observed:

> The parties got together. They reached a stipulation. There was some language in the stipulation about transferring the vendor's interest in the land contract to the estate.... [T]here's another important aspect of the stipulation that

I'm relying on … which is simply that it's an order of the Court. In other words, it's no longer the agreement of the parties anymore…. And once it becomes approved, it then gets signed and becomes an order. Which transforms its legal effect in some ways. It's now something that's binding on both parties going forward….

[T]he stipulation itself was a bargained[-]for exchange on some level and both parties got something. The estate got money paid into it by the Ferrys, $17,000 or so. And the Ferrys walked away with something as well, the interest in this land contract. And by me simply saying today that there were misrepresentations and the aspect of the stipulation regarding the transfer of the land contract should be excised out or thrown out while still requiring the Ferrys to pay in money which would be the net effect of that order wouldn't be fair either…. And the net effect of which would be to throw the entire document out potentially. I don't think I can simply pretend that certain parts of it should continue to exist and certain parts of it should not …. I do view the stipulation … as a complete and entire document.

….

So I do believe that the stipulation is binding upon the parties, both because a motion to reopen was never filed and was never attacked properly and I could never even get to the merits of whether there were misrepresentations to reopen it and void it. And then secondly, even getting to the merits of the document, I don't know that the interested parties were deceived or misrepresented by the estate to induce reliance.

¶21 To the extent we do not fully address other arguments the Interested Parties raise, they have been considered. We reject them all as being governed by the stipulation. We see no misrepresentation or erroneous exercise of discretion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

8